STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

09-428


MONICA F. COVINGTON

VERSUS

KENTUCKY FRIED CHICKEN


**********

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION - # 4
PARISH OF LAFAYETTE, NO. 05-06067
HONORABLE SHARON MORROW, WORKERS' COMPENSATION JUDGE

**********

**MARC T. AMY**
**JUDGE**

**********

Court composed of Marc T. Amy, Billy Howard Ezell, and James T. Genovese, Judges.

**AFFIRMED.**

**Mark A. Ackal**
**Post Office Box 52045**
**Lafayette, LA   70505**
**(337) 237-5500**
**COUNSEL FOR DEFENDANT/APPELLANT:**
     **Kentucky Fried Chicken**

**Lawrence C. Billeaud**
**706 W. University Avenue**
**Lafayette, LA   70506**
**(337) 266-2055**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
     **Monica F. Covington**

AMY, Judge.

The claimant sought indemnity and medical benefits following an alleged work-related injury. The employer disputed the occurrence of an accident. The workers' compensation judge found in favor of the claimant, finding her account of the alleged accident credible and substantiated by her medical records. It denied penalties and attorney fees. The employer appeals. For the following reasons, we affirm.

## Factual and Procedural Background

The claimant, Monica Covington, alleges that she sustained a back injury while moving a case of chicken in the course and scope of her employment with Kenner Kentucky Fried Chicken, Inc. on May 6, 2005. She asserts that she did not immediately report the incident as she believed her injury was not serious. Neither did she seek immediate medical care. The employer disputes whether the claimant sustained a work-related injury.

According to the claimant, the accident occurred in the presence of another employee, Kevin Mergist, who then assisted her with moving the box. Mr. Mergist did not testify at trial. Although the claimant testified that she attempted to contact her supervisor, Gavin LaFont, by telephone, her call was unanswered. Mr. LaFont denied that he was informed of the alleged accident.

The claimant contends that she reported to work the following evening and asked Mr. LaFont to complete an accident report. According to the claimant, he refused. Again, Mr. LaFont denied the encounter and testified that he was not at work on that evening. While the claimant explained that other employees were present at the time she made the request, she did not present these employees as witnesses.

The claimant contends that her back pain lessened in the days following the alleged accident. However, she testified that her back "gave out" later in the month and that she reported to Southwest Medical Center. The hospital's records of May 18, 2005, presented by the employer at the hearing, verify that the claimant reported to the emergency room complaining of back pain. However, the record lists April 18, 2005, as the onset of the claimant's symptoms. As pointed out by the employer, the record does not indicate that the claimant attributed her complaints to a work-related injury at that time. The claimant explained that, after this visit, she attempted to provide a physician's excuse letter to Assistant Manager Pamela Thigpen, but that no accident form was completed.

Afterwards, the claimant's condition improved until she again visited the Southwest Medical Center emergency room on July 2, 2005. The hospital's records confirm that the claimant complained of low back pain extending to the legs. The claimant contends that, after this date, she was unable to return to work. Instead, she began undergoing physical therapy several times a week.

The claimant testified that she again requested that Ms. Thigpen complete an accident report after the July 2005 hospital visit due to her inability to work any longer and due to the payment of her expenses up to that point by use of her personal health insurance. She contends that Ms. Thigpen refused, citing the necessity of her having to complete a drug test.

At trial, Ms. Thigpen explained that the claimant informed her in July that she had injured her back in May. Ms. Thigpen stated that she did not fill out an accident report because the claimant had authority to report the accident herself. The claimant

2

explained that she did not feel that she could have done so and that she thought she worked in an inferior position to Ms. Thigpen.

The claimant did not return to work after July, but was treated with a number of steroid injections in the lumbar area after an August 2005 MRI revealed a protrusion at the L4-5 level. According to the claimant, she felt that she could return to work by December 2005, but that the employer would not allow her to do so.

The claimant instituted this matter in August 2005, seeking indemnity and medical benefits. She also sought penalties and attorney fees for the denial of these benefits. The employer denied having knowledge of any accident prior to the receipt of the claim form instituting the suit. At trial, it disputed both the claimant's account of the accident and the causation of injuries related to any such accident, relying on medical records indicating that the claimant reported back pain in the years prior to the alleged work-related accident.

The workers' compensation judge ruled in favor of the claimant, finding the claimant's account of the accident credible and substantiated by other evidence in the record. Temporary total disability benefits were awarded for the period of July 10, 2005 through January 1, 2006. Related medical care was also awarded. The workers' compensation judge denied the claim for penalties and attorney fees.

The employer appeals, assigning the following as error in its brief:

1. The finding by the WCJ that Claimant sustained personal injury as a result of an accident arising out of and in the course of her employment with KFC is not supported by the record, is manifestly erroneous, is clearly wrong and must be reversed.

2. The finding by the WCJ that Claimant is entitled to temporary total disability benefits is not supported by the record, is manifestly erroneous, is clearly wrong and must be reversed.

3

**Discussion**

*Work-Related Injury*

The employer argues that the circumstances of this case required a determination that the claimant failed to satisfy her burden of proving a work-related injury. The employer contends that the record indicates that the requirements of proving an unwitnessed accident were not met and points to the criteria of *Bruno v. Harbert International, Inc.*, 593 So.2d 357, 361 (La.1992), which provides that:

> A worker's testimony alone may be sufficient to discharge this burden of proof, provided two elements are satisfied: (1) no other evidence discredits or casts serious doubt upon the worker's version of the incident; and (2) the worker's testimony is corroborated by the circumstances following the alleged incident. *West v. Bayou Vista Manor, Inc.*, 371 So.2d 1146 (La.1979); Malone and Johnson, *13 Louisiana Civil Law Treatise, Workers' Compensation*, § 253 (2d Ed.1980).

*Bruno* further provides that corroboration of the worker's testimony may be provided by the testimony of fellow workers, spouses, friends, or medical evidence. *Id.*

In support of its argument, the employer references inconsistencies in the claimant's account of the events and certain contradictions between her testimony and that of Mr. LaFont and Ms. Thigpen. The employer also points out that, despite the claimant's denials of prior back pain, medical records indicate repeated complaints of previous back pain. Further, the records from the May and July 2005 emergency room visits to Southwest Medical Center do not indicate that the claimant attributed the pain to a work-related accident.

Also, the employer cites a May 18, 2005 triage record from Lafayette General Medical Center, indicating that the claimant reported to that facility shortly before visiting the Southwest Medical Center emergency room. Although the report lists low back pain as the complaint, the triage nurse's comments indicate a history of

4

"'slipped disc" and that the claimant "stat[ed] low back pain x 1 month." The triage record reports that: "Patient paged in lobby-no answer." When presented with the Lafayette General record at trial, the claimant stated that she did not recall visiting Lafayette General that day.

As for the claimant's contention that the May 18, 2005 emergency room visit at Southwest Medical Center was the first related to the alleged work-related accident, the assessment portion of the record lists "atraumatic" low back pain and the history portion bears a notation of "no trauma[.]" Again, there is no reference to it being work-related. Similarly, the July 2, 2005 Southwest Medical Center record does not attribute the pain to a work accident. The employer contends that this undermines the claimant's testimony that she related the pain to work. Finally, and although some of the claimant's physical therapy records state that the claimant was injured at work, some of the records relate the injury to a slip and fall at work, rather than a lifting injury.

As complained of by the employer, the claimant's testimony contains certain inconsistencies when compared with other evidence in the record. These inconsistencies are such that the workers' compensation judge could have found either that other evidence cast serious doubt on the claimant's version of events or that her testimony was not corroborated by subsequent circumstances. *See Bruno*, 593 So.2d 357. However, the workers' compensation judge's findings under the *Bruno* standard are subject to the manifest error standard of review. *Id.*

In reasons for ruling, the workers' compensation judge addressed the inconsistencies cited by the employer, and ultimately placed greater weight on the claimant's testimony than that of the employer's witnesses. The employer's focus on

5

the claimant's prior reports of back pain was discounted, with the workers'

compensation judge explaining:

> I am going to find in Ms. Covington's favor because I believe her.
> The record that I'm looking at, which is the entire certified records of
> Southwest Lafayette Medical Center do indicate that Ms. Covington had
> a, I'd say, significant history of urinary tract infections, whether you
> want to call it bladder infections or kidney infections. I haven't had
> enough time to clearly nail down everything obviously, but October 22,
> '01, urine test may be indicative of UTI. Actually, that was - - let's see.
> One on October 22nd of '01. I have one here August 30th of '01. I
> have another one from another time, several urinary tract infections with
> secondary complaints of back pain. With respect to the date of the
> accident and the log-in sheets, I note that on the July 2, '05 ER visit, it
> does refer to other accident [sic], the date of which is given as May 3rd
> of '05, and certainly it's within a couple of days. And the records that
> I have reviewed don't show the sciatica or the radiating pain until after
> the alleged accident date.

> I believed Ms. Covington. I found her to be credible in the way
> of corroboration. Ultimately later during the course of the treatment
> with the doctors, they do refer to a lifting accident at work. I like to
> generally look at the history closest in time to the date of the accident,
> and I believe the initial indication is lifting. It doesn't say necessarily
> lifting at work, but Ms. Covington has testified that she wasn't putting
> it on comp.

> I also would like to state for the record that Mr. LaFont appears
> to be very young, both in his physical appearance and in his demeanor,
> and given that this was three years ago, I'm not saying that he would
> have been a poor manager in any sense, but I can see that - - I can see
> where it may have been reported to him and nothing followed up
> particularly since Ms. Covington went to the doctor on her own and
> chose to put it on health insurance and continued to work after that. I
> will also comment with respect to Ms. Thigpen's testimony and her
> demeanor. I distinctly got the impression that when she was told two
> months later about the incident, I just got the impression that it was
> nothing she wanted to have anything to do with. It wasn't a comment
> on the veracity of the complaint or whether or not she actually thought
> it happened. It was just at that point in time, she was told that Mr.
> LaFont had been made aware of it and chose to do nothing. Apparently
> it was policy to get a drug test at the time. I just believe that Ms.
> Thigpen was reluctant to file any accident report because to the extent
> it may have been a voucher by her that the accident did occur or that
> procedures or that she may get in trouble because procedures weren't
> properly followed.

6

I believe there is corroboration of Ms. Covington's version of events in the fact that Ms. Thigpen did testify that Ms. Covington went to her in July, said that her back was hurting. It went back to May, and she had told Mr. LaFont, and he had done nothing. Ms. Thigpen testified that, and that absolutely corroborates a portion of Ms. Covington's testimony. With respect to the conflict in testimony between Ms. Covington and Mr. LaFont as to whether or not the matter was initially reported, I do accept Ms. Covington's testimony. I don't hold that against her that she did not force the issue any earlier or that she chose to go to the doctor and put it on her private health insurance. There is no indication whatsoever that Ms. Covington has a history of litigation or making claims, and since she felt better after a couple of days, I think it actually fits quite well she had not made claims before, probably was not entirely familiar with [the] process. Since it went away, she did not make a big deal about it. Since it went away, Mr. LaFont didn't follow up on it, so in my mind, it does make sense. It does conform to what I understand Ms. Covington's testimony and demeanor to convey.

The fact that she did have prior back complaints, again with looking through the records, the prior back complaints were all secondary to other diagnoses. She was not treated for back pain. The problems were urinary tract infections. One was the bad cough for cold with congestion. I believe there's a reference to green or yellow - - the word wasn't sputum but something, and that the cough had persisted for a long time, and I do believe that a back complaint would be secondary to two months of coughing. So I don't think those are problems. With respect to her credibility, I certainly don't find they can amount to fraud, and with respect to the domestic altercations, again the ultimate diagnosis was wrist and forehand.

In light of the above credibility assessments and the factual findings made with regard to the medical records, we find no manifest error in the trial court's determination. In *Stobart v. State, through DOTD*, 617 So.2d 880 (La.1993), the supreme court explained that a trier of fact's reasonable evaluations of credibility and reasonable inferences of fact are not to be disturbed on review, even though the appellate court may feel its own evaluations and inferences are more reasonable. *See also Veazie v. Gilchrist Constr. Co.*, 04-118 (La.App. 3 Cir. 6/2/04), 878 So.2d 742, *writ denied*, 04-1692 (La.10/8/04), 883 So.2d 1018. The record indicates that the workers' compensation judge's determinations were reasonable.

This assignment lacks merit.

7

*Temporary Total Disability Benefits*

In its final argument, the employer contends that the workers' compensation judge erred in awarding temporary total disability benefits as the plaintiff failed to present clear and convincing evidence that she was unable to engage in any employment pursuant to La.R.S. 23:1221(1)(c).[1] However, the record indicates that the employer's counsel entered the following stipulation into the record at the commencement of the hearing:

> Ms. Covington's average weekly wage is Two Hundred and Nine Dollars a week, giving her a weekly indemnity rate of One Ninety-three point Thirty-three. She earned Seven Dollars and Twenty-five Cents per hour at the time of the alleged accident. We'll also stipulate that in this case that should there be any benefits awarded that the period of temporary total disability would be from July 10, 2005 through January 1, 2006.

This stipulation, which includes the end date for the disability period, joins a December 13, 2005 medical report indicating that the claimant was improving following her third injection following an injury "while picking up something at work." Records from the medical group following prior visits do not include a work status notation, whereas the December 2005 report indicates that the claimant "can return to work light duty status. No lifting more than 20 lbs and was limited stooping, squatting and bending over."

In light of the stipulation and the medical evidence, we find no manifest error in the trial court's award of disability benefits. This assignment lacks merit.

---

[1] Louisiana Revised Statutes 23:1221(1)(c) provides, in pertinent part, that:

[T]emporary total disability shall be awarded only if the employee proves by clear and convincing evidence, unaided by any presumption of disability, that the employee is physically unable to engage in any employment or self-employment, regardless of the nature or character of the employment or self-employment, including but not limited to any and all odd-lot employment, sheltered employment, or employment while working in any pain, notwithstanding the location or availability of any such employment or self-employment.

**DECREE**

For the foregoing reasons, the judgment of the Office of Workers' Compensation is affirmed.  All costs of this proceeding are assigned to the appellant, Kenner Kentucky Fried Chicken, Inc.

**AFFIRMED.**